Whittington
vs.
Polk

An act of assembly repugnant to the constitution is void.

The court have a right to determine an act of assembly void which is repugnant to the constitution

The act of Nov. session 1801, ch. 74 relating to the administration of justice, &c is not unconstitutional

The justices of the county court under that act were not entitled to commissions during good behaviour

The writ of *assize of novel disseisin* does not lie to recover the office of chief justice of a district

GENERAL COURT, (E. S.) APRIL TERM, 1802.

## WHITTINGTON *vs.* POLK.

ASSIZE OF NOVEL DISSEISIN. The plaintiff prosecuted out of the General Court for the Eastern Shore, the following writ, to wit: "Maryland sct. The State of Maryland to the Sheriff of Somerset county. Greeting. *William Whittington,* of Worcester county, gentleman, complains, that *William Polk,* of Somerset county, gentleman, unjustly, and without judgment, hath disseised him of his freehold in his office of chief justice of the county courts of the counties of Caroline, Dorchester, Somerset and Worcester, in the fourth district of the state aforesaid, with its appurtenances, at Worcester county aforesaid in the said state, within thirty years now last past, as he saith, and so forth. Therefore you are hereby commanded, that if the said *William Whittington* shall make you secure in prosecuting his claim, then put by gages and safe pledges the said *William Polk,* that he be and appear before the general court to be held for the eastern shore of this state at Easton, in Talbot county, on the second Tuesday of April next, then and there to answer the complaint aforesaid; and have you then and there the names of the pledges, and this writ, and so forth. Witness the honourable *Jeremiah Townley Chase,* chief judge of the said court, the eighth day of September in the year of our Lord one thousand eight hundred and one.

Issued the 24th of March, 1802.

*James Earle, Junr.* Clk."

*( L. Martin. )*

*Sheriff's return.* "Maryland, Somerset county, to wit: The within named *William Polk* is attached by pledges, with notice of trial at the next term, on the 7th day of April 1802.

Pledges to prosecute, } John Doe, Richard Roe.

So answers     *Jno. Wilkins,* Shff."

*Declaration.* "Eastern Shore of Maryland, Somerset county, sct. *William Polk,* of Somerset coun-

ty, gentleman, was attached to answer the complaint of *William Whittington*, of Worcester county, gentleman, for that unjustly, and without judgment, he the said *William Polk* disseised him the said *William Whittington* of his freehold in his office of chief justice of the county courts of the counties of Caroline, Dorchester, Somerset and Worcester, in the fourth district of the state aforesaid, with its appurtenances, at Worcester county aforesaid, in the said state, within thirty years now last past, as he saith, and so forth. And whereupon the said W. W. by *Luther Martin*, his attorney, complains, that the said W. P. disseised him the said W. W. of his freehold in his office of chief justice of the county courts of the counties of Caroline, Dorchester, Somerset and Worcester, in the fourth district of this state, with its appurtenances. And for his title to the said office, and its appurtenances, the said W. W. saith, that by the constitution or form of government of this state, among other things it is provided and established, that the governor for the time being, with the advice and consent of the council, may appoint all judges; and that all judges shall hold their office during good behaviour, removable only for misbehaviour, on conviction in a court of law. And that by a certain act of the general assembly of Maryland, made and passed at a session of the general assembly, begun and held at the city of Annapolis, on Monday the seventh day of November, and ended the thirty-first day of December in the year of our Lord one thousand seven hundred and ninety-six, entitled, "An act for the better administration of justice in the several counties of this state," it was among other things enacted, that this state shall be divided into five districts, to be numbered and distinguished as follows: that is to say, Saint Mary's, Charles, Prince George's, and Calvert counties, should be the first district; Cecil, Kent, Queen Anne's, and Talbot counties, should be the second district; Anne Arundel, Baltimore and Harford counties, should be the third district; Caroline, Dorchester, Somerset, and Worcester counties, should be

the fourth district; and Washington, Frederick, Mont‑ gomery, and Allegany counties, should be the fifth dis‑ trict; and that the county courts in each district should be composed of the chief justice of the district in which each county should be, and of two associate justices appointed for such counties respectively. And the said W. W. further saith, that by a certain other act of the general assembly of Maryland, made and passed at a session of the general assembly begun and held at the city of Annapolis on Monday the sixth day of November, in the year of our Lord one thousand seven hundred and ninety-seven, and ended the twenty first day of January in the year of our Lord one thousand seven hundred and ninety‑ eight, entitled, "A supplement to the act for the bet‑ ter administration of justice in the several counties of this state," it was among other things enacted, that upon the death, resignation, removal out of the dis‑ trict, or other disqualification of any chief justice then in commission, or who might thereafter be com‑ missioned by virtue of the said act, the governor and council should be authorised and directed to appoint and commission for such district in which the vacan‑ cy might happen, one person of integrity, experi‑ ence, and sound legal knowledge, who after his ap‑ pointment should reside in the district for which he should be appointed, (and who should be styled in the commission chief justice of the county courts in such district,) and that the said chief justice should hold his commission during good behaviour, and might be removed for misbehaviour, in the same manner as the chancellor and the judges might be removed, agree‑ ably to the constitution of this state, and not other‑ wise. And that it was further enacted by the act last mentioned, that every chief justice who might be thereafter appointed in virtue of the said act for the fourth district, should receive as a compensation for his services, at the rate of one thousand three hun‑ dred dollars per annum. And the said W. W. fur‑ ther saith, that agreeably to the constitution of this state, and according to the provisions and directions

of the two acts of assembly in part above recited, on the 28th day of February 1799, the governor of this state, with the advice and consent of the council, did duly appoint and commission, according to the directions of the constitution and laws of this state, the aforesaid W. W. to the office of chief justice of the county courts of the counties of Caroline, Dorchester, Somerset and Worcester, in the fourth district of the state aforesaid, (which office was then vacant,) and to hold his said office during his good behaviour, &c. And which said commission the said W. W. brings into court, the date whereof is the same day and year aforesaid. And the said W. W. further saith, that he did accept the said commission and office, and that afterwards, on the 12th day of March 1799, he the said W. W. took the several oaths required by the constitution of the United States, and by the constitution, and acts of the general assembly, of this state, and subscribed a declaration of his belief in the christian religion, before he acted in his said office of judge. And the said W. W. saith that he took and received the salary and profits of the said office from the date of his commission aforesaid, until the 20th day of January last; and at the time of his being appointed and commissioned he was, and ever since he hath been, and at this time he is, a person of integrity, experience, and sound legal knowledge, and fit and sufficient to execute the said office; and that at the time of his being appointed and commissioned as aforesaid, and long before and ever, since, he hath been, and at this time is a resident of the said fourth district; and that he was seized of, held, exercised and enjoyed, the said office, and discharged the duties thereof, and behaved himself well therein from the said 12th day of March 1799, until the 8th day of February 1802, when the aforesaid W. P. at Worcester county aforesaid, unjustly, and without judgment, disseised him the said W. W. of his freehold in his aforesaid office, with its appurtenances, and so forth; and this he is ready to verify; and thereof he bringeth suit, and so forth.

APRIL 1802

Whittington
vs
Polk

APRIL 1802

Whtington
vs
Polk

*Luther Martin*, Att'y for plaintiff. ⎫ John Doe and
    Pledges to prosecute ⎭ Richard Roe."

*Plea.* "And the said *William Polk*, by *Josiah Bayly*, his attorney, comes and defends the force and injury, when, &c. and whatever, &c. and saith, that the said W. W. never was seized of the office aforesaid of such estate, whereof he the said W. W. could be disseised; and if, &c. then the said W. P. saith, that he hath done no injury nor disseisin of the office aforesaid to him the said W. W. in such manner and form as the said W. W. above against him hath declared, and so forth; and of this he puts himself upon the assize, &c. And the said W. W. likewise, &c."

*Special Verdict.* "And the jurors aforesaid, upon their oath aforesaid, do say, that under and pursuant to the directions of the act of the general assembly of this state, passed at November session 1796, entitled, "An act for the better administration of justice in the several counties of this state," and under and by virtue of the several acts of assembly for continuing and amending the same and supplementary thereto, a commission from the governor and council of this state, under the great seal thereof, and in due form of law, did issue to the plaintiff, bearing date on the 28th day of February 1799, which commission is in the following words: [*The commission here follows.*] And that the plaintiff did accept the said commission, and did duly qualify under the same, and did enter into the discharge of the duties of the said office, and continued to discharge them in a proper and sufficient manner, until the 20th day of January now last past, and received the salary annexed by law to the said office. And they further find, that the plaintiff, at the time of the date of the said commission, and at all times since, did reside, and still doth reside within the fourth district aforesaid, in the said commission mentioned; and hath not in any manner resigned or forfeited the said commission. And they further find, that under and pursuant to the directions of the act of the general assembly of this state, passed at November ses-

April 1802.

Whittington
vs.
Polk.

sion 1801, entitled, "An act relative to the administration of justice in this state, and to repeal the acts of assembly therein mentioned," a commission in due form of law, from the governor and council of this state, under the great seal thereof, did issue to the defendant, which commission bears date on the 28th day of January 1802, and is in the following words: [*The commission here follows.*] And that the defendant did accept the said commission, and did duly qualify under the same, and did enter into the discharge of the duties of the said office, and hath continued until the present time to discharge the same in a proper and sufficient manner, and still continues to hold the said office, and discharge the said duties, without having in any manner resigned or forfeited the said office. And they further find, that at the time of the date of the last mentioned commission, and ever since, the defendant hath resided, and still doth reside within the said fourth district in the said commissions mentioned; and that both the plaintiff and defendant are persons of integrity, experience and sound legal knowledge. But whether upon the whole," &c. &c.

"*Jno. Edmondson,* Foreman."

*Martin,* (Attorney General,) and *Harper,* for the plaintiff.

*Bullitt, Scott* and *Bayly,* for the defendant.

This case was argued before *Chase,* Chief Judge, *Duvall* and *Done,* Judges—and they took time to form their opinion till June following, when the following opinion in writing, signed by all the judges, was delivered by

CHASE, Ch. J.—In the discussion of this case the following points were raised and contended for by the counsel of the plaintiff.

1st. That an act of assembly repugnant to the constitution is void.

2d. That the court have a right to determine an act of assembly void, which is repugnant to the constitution.

3d. That the act of assembly passed in 1801, *ch.* 74, entitled, "An act relative to the administration of justice in this state, and to repeal the acts of assembly therein mentioned," so far as respects the plaintiff, is unconstitutional and void.

4th. That the *Assize of Novel Disseisin* is the proper remedy to recover the office of chief justice of the fourth district.

The *two first points* were conceded by the counsel for the defendant; indeed they have not been controverted in any of the cases which have been brought before this court.

Notwithstanding these concessions, the court deem it necessary to communicate the reasons and grounds of their opinion on those points.

The bill of rights and form of government compose the constitution of Maryland, and is a compact made by the people of Maryland among themselves, through the agency of a convention selected and appointed for that important purpose.

This compact is founded on the principle that the people being the source of power, all government of right originates from them.

In this compact the people have distributed the powers of government in such manner as they thought would best conduce to the promotion of the general happiness; and for the attainment of that all important object have, among other provisions, judiciously deposited the legislative, judicial and executive, in separate and distinct hands, subjecting the functionaries of these powers to such limitations and restrictions as they thought fit to prescribe.

The legislature, being the creature of the constitution, and acting within a circumscribed sphere, is not omnipotent, and cannot rightfully exercise any power, but that which is derived from that instrument.

The constitution having set certain limits or land marks to the power of the legislature, whenever they exceed them they act without authority, and such acts are mere nullities, not being done in pursuance of power delegated to them: Hence the necessity of

some power under the constitution to restrict the acts of the legislature within the limits defined by the constitution.

The power of determining finally on the validity of the acts of the legislature cannot reside with the legislature, because such power would defeat and render nugatory, all the limitations and restrictions on the authority of the legislature, contained in the bill of rights and form of government, and they would become judges of the validity of their own acts, which would establish a despotism, and subvert that great principle of the constitution, which declares that the powers of making, judging, and executing the law, shall be separate and distinct from each other.

This power cannot be exercised by the people at large, or in their collective capacity, because they cannot interfere according to their own compact, unless by elections, and in such manner as the constitution has prescribed, and because there is no other mode ascertained by which they can express their will.

It is true the people may assume the powers of government whenever the ends of it are perverted, when public liberty is manifestly endangered, and all other means of redress are ineffectual; but surely every act of the legislature repugnant to, or in violation of the constitution, cannot be held a sufficient cause for the interposition of the people in a way which subverts the government and reduces the people to a state of nature, and therefore cannot be the proper mode of redress to remedy the evils resulting from an act passed in violation of the constitution.

The interference of the people by elections cannot be considered as the proper and only check and a suitable remedy, because in the interval of time, between the elections of the members who compose the different legislatures, the law may have had its full operation, and the evil arising from it become irremediable; nor is it probable that the elections will be made with the view to afford redress in such particu-

APRIL 1802

Whittington
vs
Polk

lar case, and if they were, and the law should be re-pealed, it would not be an adequate remedy.

The senate of Maryland, one of the component parts of the legislature, is elected for five years, and vacancies in that body, occasioned by death, resignation, or removal out of the state, are filled up by their own appointment. The present senate was elected in the month of September 1801, and the law under which the plaintiff claims the office of chief justice of the fourth district is a temporary law, and would have expired before the termination of the five years for which the present senate is elected, which shews in this instance that the interference of the people in their elections is not the proper mode of redress for an injury sustained by an act passed in violation of the constitution.

It is the office and province of the court to decide all questions of law which are judicially brought before them, according to the established mode of proceeding, and to determine whether an act of the legislature, which assumes the appearance of a law, and is clothed with the garb of authority, is made pursuant to the power vested by the constitution in the legislature; for if it is not the result or emanation of authority derived from the constitution, it is not law, and cannot influence the judgment of the court in the decision of the question before them.

The oath of a judge is "that he will do equal right and justice according to the law of this state, in every case in which he shall act as judge."

To do right and justice according to the law, the judge must determine what the law is, which necessarily involves in it the right of examining the constitution, (which is the supreme or paramount law, and under which the legislature derive the only authority they are invested with, of making laws,) and considering whether the act passed is made pursuant to the constitution, and that trust and authority which is delegated thereby to the legislative body.

The three great powers or departments of government are independent of each other, and the legisla--

APRIL 1802

Whittington
vs.
Polk

·ture, as such, can claim no superiority or pre-eminence over the other two. The legislature are the trustees of the people, and, as such, can only move within those lines which the constitution has defined as the boundaries of their authority, and if they should incautiously, or unadvisedly transcend those limits, the constitution has placed the judiciary as the barrier or safeguard to resist the oppression, and redress the injuries which might accrue from such inadvertent, or unintentional infringements of the constitution.

This power is properly vested in the judiciary, because to secure their uprightness and independency, the constitution declares they shall hold their commissions during good behaviour, and shall receive liberal salaries as a compensation for their services, and because they are appointed by the executive, who, it is to be presumed, will appoint those persons judges, who are most distinguished for their integrity, experience, and reputation for legal knowledge; such men, from the nature of their studies and avocations in life, may be presumed, without disparagement to the talents and legal acquirements of others, better qualified, and more competent than the rest of the community, to the decision of legal and constitutional questions.

It is true this presumption, like many others, may fail in some instances; but that by no means proves the fallacy of the reasoning, or evinces the impropriety of lodging the power with the judiciary.

To secure an honest decision, and to prevent the mischiefs, which would flow from partiality or corruption, the judges are liable to be removed from office, on conviction of misbehaviour, in a court of law.

It is also observable, that the courts cannot take judicial cognizance of any act repugnant to the constitution, unless the question is judicially brought before them, and then it is fully discussed by counsel learned in the law, and the court decide on mature consideration.

Under these safeguards nothing can be wanting to inspire a well grounded confidence in the people, that the judiciary will honestly and rightly determine all questions which are brought before them, arising under the constitution, and the laws of the state made pursuant thereto.

As to the *third point.* That the act of assembly passed in 1801, *ch.* 74, entitled, "An act relative to the administration of justice in this state, and to repeal the acts of assembly therein mentioned," so far as respects the plaintiff, is unconstitutional and void.

The court cannot help regretting that any occurrence should render it necessary to resort to the judiciary to decide the question, whether an act of the general assembly is constitutional or not? But whenever it does become necessary, and the case is judicially brought before this court, they trust they will not seek any evasion, or shrink from the determination of it, but act with caution and circumspection, and give it that consideration which the importance of it, and their duty, demand.

The motives which may induce the legislature to pass a law cannot be inquired into by the court in a question as to its constitutionality; nor can the policy or inexpediency of the law have any influence with them in deciding such question.

The only inquiry with the court is, whether the act passed is made pursuant to the power vested in the general assembly by the constitution.

Although, in the opinion of the court, the authority of the general assembly is limited, yet as the powers of legislation are not particularly or specifically defined, but conferred under a general grant, they are subject only to such restrictions and limitations as are prescribed by the bill of rights and form of government, and the constitution of the United States.

The parts of the constitution most applicable to the question, and which have been very amply animadverted on by the counsel, are the following articles of the form of government:

The 40th. That the chancellor, all judges, the attorney general, clerks of the general court, the clerks of the county courts, &c. shall hold their commissions during good behaviour.

APRIL 1802

Whittington
vs.
Polk

The 49th. That all civil officers of the appointment of the governor and council, who do not hold commissions during good behaviour, shall be appointed annually in the third week of November.

The 47th. That the judges of the general court, and justices of the county courts, may appoint the clerks of their respective courts.

The 50th. That the governor, every member of the council, every judge and justice, before they act as such, shall respectively take an oath, "that he will not, through favour, affection or partiality, vote for any person to office," &c.

The 56th. That there be a court of appeals, &c.

The 44th. That a justice of the peace may be eligible as a senator, delegate, or member of the council, and may continue to act as a justice of the peace.

And the following articles of the bill of rights.

The 6th. That the legislative, executive, and judicial powers of government, ought to be for ever separate and distinct from each other.

The 30th. That the independency and uprightness of judges are essential to the impartial administration of justice, and a great security to the rights and liberties of the people; wherefore the chancellor and all judges ought to hold commissions during good behaviour.

In the report of the committee it stood, "wherefore the chancellor, all judges *and justices*," &c. but it does not appear by the printed proceedings of the convention how the word *justices* came to be omitted.

The judiciary of Maryland, previous to the time when the constitution of Maryland was formed, consisted of county courts, a provincial, now general court, a court of appeals, chancery court, and court of admiralty.

The justices of the peace in their respective counties were conservators of the peace, and individually or singly had a limited jurisdiction conferred by acts of assembly, and in their respective counties they composed the county courts, but for holding court one of the quorum must have been present, *i. e.* one of certain justices named in the commission.

By an act of the general assembly which passed at the first session of assembly, (in February 1777,) which was held after the formation of the government, the forms of the commissions were prescribed. The judges of the court of appeals, general court and court of admiralty, were to hold their commissions during good behaviour; the justices of the county courts until they should be duly discharged.

The justices of the county courts have been annually appointed by the governor and council.

This has been the uniform and uninterrupted practice ever since the constitution was established until the modification of the system in the year 1790.

By the 48th article of the form of government, the governor, with the advice and consent of the council, may suspend or remove any civil officer who has not a commission during good behaviour.

It appears to the court, upon considering the several parts of the constitution which relate to the question, to be the plain and obvious meaning of that instrument, that the justices of the county courts were not entitled to commissions during good behaviour.

A plain distinction is kept up between the justices of the county courts and the judges of the other courts, and a studied uniformity of language has been observed throughout to preserve the distinction.

So far as respects the justices of the county courts, the principle in the bill of rights, that the legislative, executive and judiciary, shall for ever be kept separate and distinct, is departed from, and they are made capable of being elected members of the general assembly, or members of the council; which constitutes a very striking distinction between the justices of the county courts, and the judges of the other courts, and

manifests plainly that it was not the intention to place them on the same footing as to the durability of their commissions.

The word *justices,* which was inserted in the report of the committee, being omitted in the bill of rights, is a circumstance which, with the act of assembly directing the forms of the commissions, operates forcibly on our minds to confirm our opinion.

The general assembly possess competent authority to modify the county courts in such manner as they may think will conduce to the better administration of justice, and this power has been exercised.

The power and authority of the plaintiff as chief justice of the fourth district, and his right to the office of chief justice, are created by, and derived from the legislature, and the duration of his commission is limited by act of assembly. Upon his appointment by the executive, his acceptance of the commission, and qualifying under the same, a right vested in him to hold the office for the term of years limited for the continuance of the law; which right was not to cease or determine but on his death, or on his being convicted, in a court of law, of misbehaviour.

Although, in the opinion of the court, the said repealing act, in depriving the plaintiff of his said office, is an infraction of his right, and incompatible with the principles of justice, and does not accord with sound legislation; yet the said office, and the right to hold it, being created by act of assembly, and not vested in the plaintiff by the constitution, and there being no clause or article in the bill of rights or form of government prohibiting or restricting the legislature in passing the said repealing act, the court are of opinion that the said act is not void.

The court are also of opinion, that the writ of *assize of novel disseisin* does not lie in this case to recover the said office, because the plaintiff has only an interest for a term of years in the said office, determinable on the contingency of his being convicted of misbehaviour in a court of law; and that writ is not adapted to the recovery of any estate or interest in

lands, or in an office less than a freehold, except in the case of a tenant by *elegit*, who has a chattel interest, or an interest less than freehold, having a right to hold a moiety of the lands of the debtor, until the debt is satisfied by holding the land and perception of the profits, at the extended value.

The remedy by writ of *assize of novel disseisin* was given to the tenant by *elegit*, by the statute of 13 *Edw. I. c.* 18, to recover the possession of the land in case he was ousted before his debt was satisfied, and this remedy has been extended in England to the tenant by statute Merchant, and statute Staple, by equity of the said statute, from the similitude of their estates to that of tenant by *elegit*. But the court know of no other case in which that remedy has been allowed to recover an interest less than a freehold; and are of opinion, that the writ of *assize of novel disseisin* cannot be extended to this case by equity of the said statute, there being no similarity between the estate of tenant by *elegit*, and the interest which the plaintiff has in the office of chief justice of the fourth district; and besides, the court know of no instance, in this state, in which the tenant by *elegit* has brought the writ of *assize of novel disseisin* to recover his possession, and none of the English statutes which passed anterior to the first emigration of the inhabitants of Maryland, have been adopted by the constitution of Maryland, and incorporated with the laws, but such as have been found by experience to be applicable to our local and other circumstances. And it does not appear to the court there can be any other safe criterion by which the applicability of such statutes to our local and other circumstances can be ascertained and established, but that of having been used and practised under in this state.

For these reasons the court are of opinion, that the writ of *assize of novel disseisin* cannot be sustained in this case; and order judgment of *non pros* to be entered.

DUVALL, J. Dissented to that paragraph in the reasoning, which states the right of the plaintiff to the office to be during the continuance of the act under which he was commissioned, and that the act of 1801 was an infraction of his right, &c. as will appear by the following letter:

*Annapolis, 12th June,* 1802.

SIR:—To-morrow Col. *Done* will leave this place, and on his return home, will deposit with you the opinion of the judges in the case of *Whittington* against *Polk.*

I concurred in the opinion given on each of the points made in the cause: that is to say,

1. That an act of the legislature contrary to the constitution is void.

2. That the courts of judicature have a power to declare it void.

3. That the act of 1801 relating to the judiciary is not void.

4. That the writ of *assize of novel disseisin* the office of chief justice of the 4th district cannot be sustained.

Thus concurring, the opinions and reasoning have my signature: but I declared my dissent at the time, to that paragraph, in the reasoning, which states the right of Mr. *Whittington* to the office, to be during the continuance of the act under which he was commissioned, and that the act of 1801, was an infraction of his right, &c.

I considered the observations in this paragraph as partly erroneous, and partly extrajudicial.

It would have been more proper to have noted the exceptions in writing, at the time of signing, but that having been omitted, let this letter remain among your files as a memorial that my assent was not given to the paragraph alluded to.

I am, Sir, respectfully,
Your obedient servant,
G. DUVALL.

JAMES EARLE, Esq. *Clerk of the General Court, Eastern Shore.*