903 A.2d 883

Robert P. DUCKWORTH, et al.

v.

Gitanjali DEANE, et al.

No. 101, Sept. Term, 2004.

Court of Appeals of Maryland.

July 28, 2006.

**528**

Steven L. Tiedemann (Coover, Barr & Tidemann, LLC, Columbia; David R. Langdon of Langdon & Shafer, LLC, Cincinnati, OH; Benjamin W. Bull, Glen E. Lavy and Dale Schowengerdt, Alliance Defense Fund, Scottsdale, AZ), all on brief, for appellants.

Matt M. Paavola (Law Office of Matt M. Paavola & Associates, Baltimore; William F. Mulroney of Ashcraft & Gerel, LLP, Baltimore), all on brief, for appellants.

Andrew H. Baida (Caroline D. Ciraolo of Rosenberg, Martin, Funk, Greenberg, LLP, Baltimore; Kenneth Y. Choe and James D. Esseks, American Civil Liberties Union Foundation, Lesbian and Gay Rights Project of New York, NY; Arthur B. Spitzer of American Civil Liberties Union Foundation of the National Capital Area, Washington, DC; David R. Rocah, American Civil Liberties Union Foundation of Maryland, Baltimore), all on brief, for appellees.

Steven M. Sullivan, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, and Margaret Ann Nolan, Assistant Attorney General of Baltimore, and Robert A. Zarnoch and Kathryn M. Rowe, Assistant Attorneys General, Annapolis), all on brief.

Argued before BELL, C.J., RAKER, CATHELL, HARRELL, BATTAGLIA, JOHN C. ELDRIDGE (Retired, Specially Assigned) and LAWRENCE F. RODOWSKY (Retired, Specially Assigned), JJ.

ELDRIDGE, J.

These appeals are from a judgment of the Circuit Court for Baltimore City in which the Circuit Court denied three motions to intervene in an action challenging the constitutionality of a Maryland statute. The statute, Maryland Code (1984, 2004 Repl.Vol.), § 2–201 of the Family Law Article, states: "Only a marriage between a man and a woman is valid in this State." The case at bar presents no issue as to the constitutionality of § 2–201. Instead, the issues in these appeals concern only the matter of intervention. On March 11, 2005, we issued an order affirming the judgment of the Circuit Court denying intervention. This opinion sets forth the reasons for that affirmance.

I.

The case began on July 7, 2004, when nineteen plaintiffs filed a complaint in the Circuit Court for Baltimore City against the Clerks of the Circuit Courts for Baltimore City, Prince George's County, St. Mary's County, Washington County, and Dorchester County. The complaint identified the plaintiffs as "nine Maryland lesbian and gay couples and one Maryland gay man." Four of the couples resided in Baltimore City; three of them resided in Prince George's County; one couple resided in Dorchester County, and the "gay man" resided in Washington County. As to the ninth couple, the complaint stated that one resided in St. Mary's County and the other resided in Costa Rica.

The complaint alleged that each of the nine couples applied to the defendant Clerks of Court in Baltimore City, Prince George's County, Dorchester County, or St. Mary's County for a marriage license submitting "all of the paperwork and fees necessary to obtain a marriage license," but that each of the

Clerks of Court "refused to issue a marriage license ... for the sole reason that [the applicants] are a same-sex couple." The complaint also stated that the Washington County resident "seeks the right to marry" a person of the same sex, but that the "office of the Washington County Circuit Court Clerk will not issue marriage licenses to same-sex couples."

The complaint went on to allege numerous disadvantages which the plaintiffs purportedly suffered by not being able to marry. The plaintiffs asserted that § 2–201 of the Family Law Article violated Articles 46 and 24 of the Maryland Declaration of Rights.[1] The plaintiffs sought a declaratory judgment that § 2–201 was in violation of Articles 46 and 24, and an injunction "[e]njoining Defendants from refusing to issue marriage licenses to Plaintiff couples or other same-sex couples because they are same-sex couples."

The defendants, represented by the Attorney General of Maryland, filed an answer which, *inter alia*, admitted that § 2–201 does "not permit the issuance of a [marriage] license to same sex couples," admitted that the defendants will not issue marriage licenses to same sex couples," and denied that " § 2–201 violates the Maryland Constitution." The defendants requested that the Circuit Court deny the injunctive relief sought and enter a declaratory judgment that " § 2–201 is constitutional under Articles 46 and 24 of the Maryland Declaration of Rights."

As mentioned earlier, three separate motions to intervene were filed in the case. The first was filed by the appellant Robert P. Duckworth, Clerk of the Circuit Court for Anne

---

1. Article 46 of the Declaration of Rights provides as follows:
   "**Article 46. Equality of rights not abridged because of sex.**
   "Equality of rights under the law shall not be abridged or denied because of sex."
   Article 24 of the Declaration of Rights states:
   "**Article 24. Due process.**
   "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

Arundel County, who sought intervention represented by his own privately retained counsel. Duckworth asserted that he had a "right" to intervene because he "is charged with issuing marriage licenses" and, "[i]f plaintiffs are successful, this Court will create uncertainty with regard to Mr. Duckworth's conduct of his office and, whether or not he complies with this Court's order, he would be subject to potential civil and criminal claims." Duckworth characterized this as a "personal interest." Alternatively, Duckworth sought permissive intervention "because (1) his defense to the relief sought by the Plaintiffs has a question of law in common with the instant action; (2) the statute subject to review in this action affects him personally; and (3) Plaintiffs' action relies for ground of claim or defense on a constitutional provision affecting Mr. Duckworth."

Duckworth alleged that he "believes each of the Court Clerks sued in this action is sympathetic to Plaintiffs' cause," that the defendants are represented by the Attorney General's Office, and that "Duckworth and his counsel ... doubt that office's commitment to the defense of traditional marriage in Maryland." Duckworth raised one argument which had not been raised by the Attorney General representing the defendants, namely Duckworth's contention that the Circuit Court for Baltimore City "lack[ed] subject matter jurisdiction" to rule upon the constitutionality of § 2–201 of the Family Law Article.

The second motion for intervention was filed by eight members of the General Assembly of Maryland. Five were members of the House of Delegates and three were members of the Senate, and they sought intervention represented by their privately retained counsel. They also claimed that they had a right to intervene, and, alternatively, they sought permissive intervention. The eight General Assembly members expressed "doubt" about the Attorney General's "commitment to the defense of ... § 2–201," and they indicated that their "interest in their legislative authority" would not be adequately represented by the Attorney General. The eight members claimed an interest in the subject matter, stating:

"As legislative supporters of ... § 2–201 and the policy which it reflects, Intervenors' ability to regulate marriage will be affected by this case. Intervenors have an official interest to intervene here where their legislative authority to regulate marriage is threatened by encroachments proscribed by the separation of powers provision of the Maryland Constitution.... If the Court finds ... § 2–201 unconstitutional, Intervenors have an interest in appealing that decision."

The legislators went on to suggest that a judicial decision invalidating § 2–201 of the Family Law Article would be a "judicial encroachment" upon the authority of the General Assembly and would violate the separation of powers principle contained in Article 8 of the Maryland Declaration of Rights.[2] Like the argument in the Duckworth motion, the eight members of the General Assembly contended that the Circuit Court for Baltimore City "lacks subject matter jurisdiction" to decide the constitutionality of § 2–201 of the Family Law Article. The eight legislators also suggested that the Attorney General would not raise this jurisdictional issue.

The third motion to intervene was filed pro se by Toni Marie Davis, a resident of Baltimore City, who also claimed a right to intervene and, alternatively, sought permissive intervention. Davis asserted "that the out come of this action will affect not only my everyday life, but the everyday lives of every resident in Maryland." Davis continued:

"[T]he homosexual life style is against my religion, which is protected under the first Amendment of the U.S. Constitution. And the out come of this case will affect my ability to protect my religious beliefs and interest in not allowing a

---

**2.** Article 8 of the Declaration of Rights states as follows:

"**Article 8.  Separation of powers.**

"That the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other."

person or group of people to force me to acknowledge [their] chosen way of living, [their] life style."

The Circuit Court, by two orders filed on September 21, 2004, and one order filed on September 30, 2004, denied all three motions to intervene. Mr. Duckworth, the eight legislators, and Ms. Davis all filed timely notices of appeal to the Court of Special Appeals. Prior to argument in the Court of Special Appeals, this Court issued a writ of certiorari. *Duckworth v. Deane*, 384 Md. 448, 863 A.2d 997 (2004).

## II.

Maryland Rule 2–214 provides in pertinent part as follows:
**"Rule 2–214. Intervention.**

(a) **Of right.** Upon timely motion, a person shall be permitted to intervene in an action: (1) when the person has an unconditional right to intervene as a matter of law; or (2) when the person claims an interest relating to the property or transaction that is the subject of the action, and the person is so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest unless it is adequately represented by existing parties.

(b) **Permissive.** (1) Generally. Upon timely motion a person may be permitted to intervene in an action when the person's claim or defense has a question of law or fact in common with the action."

\* \* \*

Duckworth's argument in this Court, that his motion to intervene should have been granted, is based upon the intervention-of-right provision in Rule 2–214(a) and upon the Declaratory Judgment Act, Maryland Code (1974, 2002 Repl.Vol.), § 3–405 of the Courts and Judicial Proceedings Article.[3] On

---

**3.** Section 3–405 of the Courts and Judicial Proceedings Article provides as follows:

"§ 3–405. Parties; Attorney General

appeal, Duckworth does not rely on the permissive interven-
tion provision of Rule 2–214(b). Moreover, Duckworth makes
it clear that he does not desire to intervene with representa-
tion by the Attorney General. Instead, he insists that he had
a right to intervene with his own privately retained counsel.
Duckworth argues that he has "an interest" in the matter,
within the meaning of Rule 2–214(a), because, as a Clerk of a
Circuit Court, he is involved in the issuance or refusal to issue
marriage licenses, and because, according to his oath of office,
he must do so in accordance with the Maryland Constitution.
Duckworth states that, if he declines to issue marriage licens-
es to same sex couples, he might be subject to criminal or civil
actions which might result in criminal or civil penalties or
damages. He repeatedly labels this asserted interest as "per-
sonal." Consequently, the issue in Duckworth's appeal is not
the broad one of whether he had a right to intervene. Rather,
as acknowledged by Duckworth's counsel at oral argument
before us, the only issue is the narrower one of whether
Duckworth had a right to intervene represented by his own
privately retained counsel.

The eight members of the General Assembly argue that
they had a right to intervene pursuant to Rule 2–214(a)(1) and
(2), that, alternatively, the trial court abused its discretion in
denying permissive intervention, and that as a third alterna-
tive, the Declaratory Judgment Act, Code (1974, 2002 Repl.

---

(a) *Person who has or claims interest as party.* (1) If declaratory
relief is sought, a person who has or claims any interest which would
be affected by the declaration, shall be made a party.

(2) Except in a class action, the declaration may not prejudice the
rights of any person not a party to the proceeding.

(b) *Municipality or county as party.* In any proceeding which
involves the validity of a municipal or county ordinance or franchise,
the municipality or county shall be made a party and is entitled to be
heard.

(c) *Role of Attorney General.* If the statute, municipal or county
ordinance, or franchise is alleged to be unconstitutional, the Attorney
General need not be made a party but, immediately after suit has
been filed, shall be served with a copy of the proceedings by certified
mail. He is entitled to be heard, submit his views in writing within a
time deemed reasonable by the court, or seek intervention pursuant
to the Maryland Rules."

Vol.), § 3–405(a) of the Courts and Judicial Proceedings Article, "mandates that intervention be granted." (Brief of the legislator appellants at 14).[4] The legislators' argument based on the Declaratory Judgment Act was not made in the trial court, and is advanced for the first time on appeal.

The eight members of the General Assembly claim that they had a right to intervene because the "Legislature ha[s] plenary power over the subject matter of marriage contracts," and that "individual legislators must have a right to intervene . . . to protect their legislative authority." (*Id.* at 4). The legislators state that they "have an affected interest in defending the policy and the constitutionality of . . . § 2–201 as a valid exercise of legislative power." (*Id.* at 6). The eight General Assembly members contend that the existing parties and the Attorney General might not adequately represent the legislators' interest because the Attorney General is not raising the questions of subject matter jurisdiction, justiciability and separation of powers. (*Id.* at 9). They also suggest that the existing parties, represented by the Attorney General, may not appeal from an adverse decision by the trial court. The legislators' alternative argument, that the trial court abused its discretion in denying permissive intervention, is based on the same contentions underlying their argument concerning a right to intervene under Rule 2–214(a). It should be noted, as pointed out by the appellees, that none of these eight legislators was a member of the General Assembly when § 2–201 of the Family Law Article was enacted by Ch. 213 of the Acts of 1973. Moreover, neither the General Assembly, nor either house of the General Assembly, nor the presiding officers of the General Assembly have authorized the eight legislators to intervene in the litigation.

On appeal, Toni Marie Davis's argument is essentially the same as the argument set forth in her motion to intervene, namely that the outcome of the litigation will affect her and all other residents of Maryland, that "the homosexual life style is

4. *See* n. 3, *supra.*

against my religion, which is protected under the first Amendment of the United States Constitution," and that the outcome of the case "will affect my ability to protect my ... religious beliefs in not allowing a person or group of people to force me to acknowledge [their] ... way of living." (Brief of Toni Marie Davis at 5).

## III.

### A.

With regard to Duckworth's appeal, even if it could be assumed *arguendo* that he had a right to intervene, it is clear that he had no right to intervene by his privately retained counsel. In light of Duckworth's description of his "interest" and his allegations, any right of intervention, which he might have had, would have been intervention represented by the Attorney General of Maryland. Nonetheless, Duckworth has consistently disclaimed any desire for intervention with representation by the Attorney General.

Maryland Code (1984, 2004 Repl.Vol.), § 6–106(b) and (c) of the State Government Article, provides as follows:

"(b) *Counsel for officers and units.* Except as otherwise provided by law, the Attorney General is the legal adviser of and shall represent and otherwise perform all of the legal work for each officer and unit of the State government."

"(c) *Other counsel generally prohibited.* Except as provided in subsection (d) of this section or in any other law, an officer or unit of the State government may not employ or be represented by a legal adviser or counsel other than the Attorney General or a designee of the Attorney General."

Judge Marvin Smith for this Court, in commenting upon the role of the Attorney General under the Constitution and the above-quoted statutory provision, emphasized (*State v. Burning Tree Club*, 301 Md. 9, 34, 37, 481 A.2d 785, 794, 796 (1984)):

"It is clear from the constitutional and statutory provisions which we have cited that the Attorney General is first

and foremost the lawyer of the State. His duties include prosecuting and defending cases on behalf of the State in order to promote and protect the State's policies, determinations, and rights. He is the legal advisor to all State departments and agencies other than those for which specific exception is made by statute.

\* \* \*

"We hold that under the Constitution and statutes of Maryland the Attorney General ordinarily has the duty of appearing in the courts as the defender of the validity of enactments of the General Assembly."

Although there are several exceptions to the statutory requirement that "an officer ... of the State government may not employ or be represented by a legal adviser or counsel other than the Attorney General" (§ 6–106(c)), none of the exceptions is applicable under the circumstances of this case.

██ Nevertheless, Duckworth attempts to circumvent the legal requirement of representation by the Attorney General by calling his asserted interest in the litigation "personal." Duckworth's interest, however, as described in his motion to intervene and briefs, relates entirely to the performance of his duties as a state official. Duckworth's interest is wholly based upon his statutory responsibility, as Clerk of the Circuit Court for Anne Arundel County, over the issuance of marriage licenses. He is in the same position as the defendant Clerks of the Circuit Courts for Baltimore City, Prince George's County, St. Mary's County, and Dorchester County, except that there were no allegations that any of the plaintiffs, or any other "same-sex couple," had applied to Duckworth for a marriage license and had been refused a marriage license.

Duckworth's attempt to evade § 6–106(b) and (c) of the State Government Article, by calling his interest "personal," is disingenuous. An individual acting "personally" has no legal authority to issue a marriage license in Maryland. *See* §§ 2–401 and 2–402 of the Family Law Article. Section 6–106(b) and (c) of the State Government Article is dispositive of

Duckworth's attempt to intervene with privately retained counsel. Duckworth's calling his interest "personal" does not render § 6–106(b) and (c) inapplicable.[5]

## B.

The arguments advanced by the eight legislators and Toni Marie Davis provide no basis for reversal of the Circuit Court's orders denying intervention.[6]

### (1)

The legislators' reliance on Rule 2–214(a)(1), permitting intervention "when the person has an unconditional right to intervene as a matter of law," is misplaced. We have pointed out on several occasions that Rule 2–214 was based on Rule 24 of the Federal Rules of Civil Procedure, and that "intervention decisions under Rule 24 . . . serve as a guide to interpreting the Maryland intervention rule." *Coalition v. Annapolis Lodge,* 333 Md. 359, 368 n. 10, 635 A.2d 412, 418 n. 10 (1994), and cases there cited.

The federal counterpart to Maryland Rule 2–214(a)(1) is Rule 24(a)(1) of the Federal Rules of Civil Procedure, which applies only when a statute or ordinance specifically confers an unrestricted right to intervene in a particular type of case. *See, e.g., Allen Calculators, Inc. v. National Cash Register Co.,* 322 U.S. 137, 64 S.Ct. 905, 88 L.Ed. 1188 (1944); *Equal Employment Opportunity Commission v. American Telephone Co.,* 506 F.2d 735 (3rd Cir.1974). This Court's opinion in *Department of State Planning v. Hagerstown,* 288 Md. 9, 11,

---

5. Duckworth's argument is similar to one, although in a different context, made to and rejected by our predecessors more than a century ago (*Boyland v. State,* 69 Md. 511, 512, 16 A. 132, 133 (1888)):

   "The real and only question presented to us is whether the appellant can legalize an illegal act by calling it by another name, and that all the courts of justice in the land are bound to regard the act itself what he may choose to call it."

6. Some of these same arguments are also made by Duckworth, and our rejection of some of the arguments furnishes an alternative ground for affirming the denial of Duckworth's motion to intervene.

415 A.2d 296, 298 (1980), concerning a statute providing that the Department of State Planning shall "[h]ave the right and authority to intervene in and become a party to any administrative, judicial, or other proceeding in the State concerning land use" etc., illustrates the type of situation contemplated by Rule 2–214(a)(1).

■ No Maryland statute has been called to our attention which specifically confers upon any of the appellants an unrestricted right to intervene in a case such as the present one. Accordingly, Rule 2–214(a)(1) furnished no basis for intervention by the appellants.

### (2)

■ Turning to intervention of right pursuant to Rule 2–214(a)(2), an applicant for intervention must claim an interest in the subject of the action such that the disposition of the action may impair or impede the applicant's ability to protect that interest. In addition, intervention is permitted only if that interest might not be adequately represented by existing parties. Both requirements must be met for intervention under Rule 2–214(a)(2). *See e.g., Board of Trustees v. City of Baltimore,* 317 Md. 72, 88–90, 562 A.2d 720, 727–729 (1989), *cert. denied,* 493 U.S. 1093, 110 S.Ct. 1167, 107 L.Ed.2d 1069 (1990); *Citizens Coordinating Comm. v. TKU,* 276 Md. 705, 712–713, 351 A.2d 133, 138 (1976). The eight legislators and Toni Marie Davis failed to show that either requirement was met.

■ Rule 2–214(a)(2)'s requirement of an "interest" in the "transaction that is the subject of the action," which may be affected by "the disposition of the action," means something more than an applicant's "generalized interest in participating in the formulation of a constitutional [or legal] standard, to which the [applicant for intervention] may be subjected," *Montgomery County v. Bradford,* 345 Md. 175, 199, 691 A.2d 1281, 1293 (1997). The disposition of the action must "directly" impact upon the applicant's interest; "concerns [which] are indirect, remote, and speculative" are insufficient. *Ibid. See*

*also Chapman v. Kamara,* 356 Md. 426, 445, 739 A.2d 387, 397 (1999) (The applicant's "interest in the [action] is neither speculative nor contingent on the happening of other events. The resolution of the [action] has a direct effect on [the applicant's] position in" another pending lawsuit).

■■ Moreover, for intervention under Rule 2–214(a)(2), the applicant's interest must be such that the applicant has standing to be a party. *Coalition v. Annapolis Lodge, supra,* 333 Md. at 368, 370, 635 A.2d at 416–417. A person's standing to be a party in a lawsuit ordinarily requires that the outcome of the lawsuit might cause the person to "suffer [ ] some kind of special damage ... differing in character and kind from that suffered by the general public." *Medical Waste v. Maryland Waste,* 327 Md. 596, 613, 612 A.2d 241, 249 (1992) (internal quotation marks omitted), and cases there cited.

■ The interest of the eight legislators and Toni Marie Davis in the litigation is no different from the interest of the general public. They would be no more affected by an adverse decision than any resident of Maryland. This was acknowledged by Ms. Davis who argued in the trial court and on appeal that the outcome of the "action will affect not only my everyday life, but the everyday lives of every resident in Maryland."

■ The eight legislators' asserted "interest" is based on the General Assembly's authority to enact statutes regulating marriage. It is true that the General Assembly as an institution may have an "interest" in a case like this which differs from the interest of the general public. Nevertheless, an individual member of the General Assembly, or eight out of a total of 188 members,[7] ordinarily have no greater legal inter-

---

7. Article III, § 2, of the Maryland Constitution provides:
   "**Section 2. Membership of Senate and House of Delegates.**
   "The membership of the Senate shall consist of forty-seven (47) Senators. The membership of the House of Delegates shall consist of one hundred forty-one (141) Delegates."

est in an action challenging the constitutionality of a statute than other Maryland residents have.

In *Raines v. Byrd,* 521 U.S. 811, 829–830, 117 S.Ct. 2312, 2322, 138 L.Ed.2d 849 (1997), holding that six members of Congress lacked standing to challenge the constitutionality of an Act of Congress, the United States Supreme Court explained (footnotes omitted):

"In sum, appellees have alleged no injury to themselves as individuals, the institutional injury they allege is wholly abstract and widely dispersed, and their attempt to litigate this dispute at this time and in this form is contrary to historical experience. We attach some importance to the fact that appellees have not been authorized to represent their respective Houses of Congress in this action, and indeed both Houses actively oppose their suit. We also note that our conclusion neither deprives Members of Congress of an adequate remedy (since they may repeal the Act or exempt appropriations bills from its reach), nor forecloses the Act from constitutional challenge (by someone who suffers judicially cognizable injury as a result of the Act). Whether the case would be different if any of these circumstances were different we need not now decide.

"We therefore hold that these individual members of Congress do not have a sufficient 'personal stake' in this dispute and have not alleged a sufficiently concrete injury to have established Article III standing."

Relying on *Raines v. Byrd, supra,* and the absence of any state statute expressly granting state legislators a right of intervention to defend the constitutionality of a state statute, the United States Court of Appeals for the Eighth Circuit in *Planned Parenthood of Mid–Missouri and Eastern Kansas v. Ehlmann,* 137 F.3d 573 (8th Cir.1998), held that ten Missouri state legislators were not entitled to intervene in a suit challenging the constitutionality of a Missouri statute. *See also Baird v. Norton,* 266 F.3d 408 (6th Cir.2001); *Hernandez v. Robles,* 5 Misc.3d 1004, 798 N.Y.S.2d 710 (N.Y.2004) (members of state legislature lacked sufficient interest to intervene

in an action challenging the constitutionality of a state statute denying marriage licenses to same-sex couples).

In addition, the eight legislators reliance upon the Declaratory Judgment Act, § 3–405(a) of the Courts and Judicial Proceedings Article,[8] is misplaced for alternative reasons. First, the argument was not made by the legislators in the trial court, and thus is not properly before us. *See* Maryland Rule 8–131(a). Second, for the reasons set forth above, the legislators do not have an "interest which would be affected by the declaration" within the meaning of § 3–405(a)(1) of the Courts and Judicial Proceedings Article.

Furthermore, even if the appellants had met the "interest" requirement of Rule 2–214(a)(2), none of the appellants meet the additional requirement of the Rule that their interest may not be "adequately represented by existing parties." While appellants assert that the Attorney General and the existing defendants are "sympathetic to plaintiffs' cause," the assertion amounts to pure speculation, is unsupported by the record, is denied by the Attorney General and the defendants, and furnishes no legal basis for holding that the representation by existing parties may be inadequate.

The appellants assert that the Attorney General and the existing defendants might not appeal from an adverse trial court decision. This assertion is not supported by anything in the record and is flatly denied by the Attorney General and the existing defendants. In addition, if it had turned out that the existing defendants had decided not to appeal from an adverse trial court decision, a person with standing could have intervened after the judgment, but before the time for appeal expired, for purposes of appealing from the judgment. *See Coalition v. Annapolis Lodge, supra,* 333 Md. at 366–371, 635 A.2d at 415–418 ("[W]here the losing party decides not to appeal, the cases have upheld post-judgment intervention for purposes of appeal when the applicant has the requisite standing and files the motion to intervene promptly after the losing

---

**8.** *See* n. 3, *supra.*

party decides against an appeal"); *Board of Trustees v. City of Baltimore, supra,* 317 Md. at 91–92, 562 A.2d at 729. It should be noted that, after our affirmance of the trial court's orders denying the motions to intervene, a judgment on the merits adverse to the defendants was entered, and the defendants, represented by the Attorney General, have appealed. That appellate proceeding is now pending.

Lastly, the appellants contend that representation by the Attorney General and the existing defendants is inadequate because the Attorney General is not arguing that the trial court lacks subject matter jurisdiction. Appellants contend that, under the separation of powers principle embodied in Article 8 of the Maryland Declaration of Rights, the judiciary has no jurisdiction to rule upon the constitutionality of a General Assembly statute regulating marriage. The appellants state that, if allowed to intervene, they will raise this jurisdictional argument. The appellants' jurisdictional argument, however, is frivolous. Thus, it provides no ground for concluding that representation by existing parties may be inadequate.

A year before the Supreme Court's opinion in *Marbury v. Madison,* 1 Cranch 137, 2 L.Ed. 60 (1803), the General Court of Maryland in *Whittington v. Polk,* 1 H. & J. 236 (1802), held that the judiciary was authorized to rule upon the constitutionality of any enactment by the General Assembly. Chief Judge Jeremiah Townley Chase for the Court explained (1 H. & J. at 242–243):

"The Bill of Rights and form of government compose the Constitution of Maryland, and is a compact made by the people of Maryland among themselves, through the agency of a convention selected and appointed for that important purpose. This compact is founded on the principle that the people being the source of power, all government of right originates from them. In this compact the people have distributed the powers of government in such manner as they thought would best conduce to the promotion of the general happiness; and for the attainment of that all-important object have, among other provisions, judiciously

deposited the legislative, judicial and executive, in separate and distinct hands, subjecting the functionaries of these powers to such limitations and restrictions as they thought fit to prescribe. The Legislature, being the creature of the Constitution, and acting within a circumscribed sphere, is not omnipotent, and cannot rightfully exercise any power, but that which is derived from that instrument.

"The Constitution having set certain limits or land-marks to the power of the Legislature, whenever they exceed them they act without authority, and such acts are mere nullities, not being done in pursuance of power delegated them: Hence the necessity of some power under the Constitution to restrict the Acts of the Legislature within the limits defined by the Constitution.

"The power of determining finally on the validity of the acts of the Legislature cannot reside with the Legislature, because such power would defeat and render nugatory, all the limitations and restrictions on the authority of the Legislature, contained in the Bill of Rights and form of government, and they would become judges of the validity of their own acts, which would establish a despotism, and subvert that great principle of the Constitution, which declares that the powers of making, judging, and executing the law, shall be separate and distinct from each other."

Chief Judge Chase continued (1 H & J at 244–245):

"It is the office and province of the Court to decide all questions of law which are judicially brought before them, according to the established mode of proceeding, and to determine whether an Act of the Legislature, which assumes the appearance of a law, and is clothed with the garb of authority, is made pursuant to the power vested by the Constitution in the Legislature; for if it is not the result of emanation of authority derived from the Constitution, it is not law, and cannot influence the judgment of the Court in the decision of the question before them.

"The oath of a Judge is 'that he will do equal right and justice according to the law of this State, in every case in

which he shall act as Judge.' To do right and justice according to law, the Judge must determine what the law is, which necessarily involves in it the right of examining the Constitution, (which is the supreme or paramount law, and under which the Legislature derive the only authority they are invested with, of making laws,) and considering whether the Act passed is made pursuant to the Constitution, and that trust and authority which is delegated thereby to the legislative body.

"The three great powers or departments of government are independent of each other, and the Legislature, as such, can claim no superiority or pre-eminence over the other two. The Legislature are the trustees of the people, and, as such, can only move within those lines which the Constitution has defined as the boundaries of their authority, and if they should incautiously, or unadvisedly transcend those limits, the Constitution has placed the judiciary as the barrier or safe-guard to resist the oppression, and redress the injuries which might accrue from such inadvertent, or unintentional infringements of the Constitution."

The principle of judicial review for constitutionality, set forth in *Whittington v. Polk, supra,* and *Marbury v. Madison, supra,* has been reaffirmed by this Court on countless occasions. *See, e.g., Insurance Commissioner v. Equitable,* 339 Md. 596, 617, 664 A.2d 862, 873 (1995); *Attorney General v. Waldron,* 289 Md. 683, 690, 426 A.2d 929, 933–934 (1981); *Perkins v. Eskridge,* 278 Md. 619, 624–626, 366 A.2d 21, 24–26 (1976); *University of Md. v. Williams,* 9 G. & J. 365, 410–412 (1838). Since there is utterly no merit in the appellants' jurisdictional argument, the Attorney General's refusal to make the argument furnishes no basis for intervention by the appellants.

For all of the above-discussed reasons, this Court affirmed the Circuit Court's judgment denying the appellants' motions for intervention.